854 So.2d 497 (2003)
Timothy HOGAN, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2002-KA-00521-COA.
Court of Appeals of Mississippi.
September 16, 2003.
*498 David Lydell Tisdell, Tunica, attorney for appellant.
Office of the Attorney General by John R. Henry, attorney for appellee.
Before McMILLIN, C.J., THOMAS and CHANDLER, JJ.
McMILLIN, C.J., for the court.
¶ 1. Timothy Hogan has appealed his conviction on three felony counts by a jury in the Circuit Court of Coahoma County. The three counts arose out of a single incident involving Hogan's alleged improper appropriation of a motor vehicle and his ensuing efforts to injure two police officers trying to arrest him. Those efforts allegedly involved driving toward the officers with the vehicle and striking them or the vehicles the officers were in. Hogan raises four issues in his appeal. We determine that the issues are without merit and affirm the verdict and resulting judgment of sentence entered in the circuit court.

I.

Facts
¶ 2. In August 2001, police officers were attempting to arrest Hogan on an outstanding arrest warrant. Acting on a tip, *499 Officer Otha Hunter went to an apartment complex and spotted Hogan. Hogan attempted to flee. In the course of his flight, Hogan ran to the parking lot of a nearby restaurant and jumped into a customer's parked car that had been left with the engine running. After initially appearing to comply with law enforcement officers' demands to exit the vehicle, Hogan suddenly drove the car towards an approaching officer. The car came in contact with the officer and he was dragged for some distance before he could free himself. The officer then fired a shot to deflate a tire on the vehicle to stop Hogan's escape. Hogan responded by driving the car toward the officer and striking him a second time.
¶ 3. Hogan then drove the vehicle into another police cruiser that had appeared on the scene. The impact of that collision was of sufficient force to throw the officer driving the cruiser out of the vehicle and into some nearby bushes.
¶ 4. By that time, other officers had arrived and there was a significant amount of gunfire as they attempted to disable the automobile Hogan was driving. The efforts to stop Hogan's flight were unsuccessful, however, and Hogan drove away from the scene. Shortly thereafter, he stopped the carby then significantly damaged by gunfireand fled on foot. He was apprehended before he managed to elude the pursuing officers.
¶ 5. Hogan was indicted for one count of taking away a motor vehicle and for four counts of aggravated assault; one count as to each of the four police officers who were on the scene in the restaurant parking lot. He was tried on all five counts. The jury convicted him on the motor vehicle count and for aggravated assault on two of the officers.
¶ 6. In this appeal from those convictions, the first three of Hogan's four issues deal with the trial court's decision to grant one particular instruction requested by the prosecution. Hogan's issues consist of several alternate arguments for the contention that it was error to give the instruction. We treat them under the general assertion that it was error to give the instruction, dealing with the alternate reasons advanced by Hogan as sub-issues to be addressed in the order presented by him in his brief. The fourth issue as defined by Hogan actually presents two distinct, though related, contentions. One is that the evidence was insufficient as a matter of law to support a conviction. The other is that the guilty verdicts are against the weight of the evidence to the extent that it would work a manifest injustice to permit them to stand.

II.

The Jury Instruction
¶ 7. Hogan contends that the trial court committed reversible error when it granted instruction C-31, which stated as follows:
It is presumed that a person intends the necessary or natural and probable consequences of his act.
¶ 8. His three contentions regarding this instruction are (a) that case law has established that it is reversible error to give such an instruction in the situation where specific intent is an element of the crime; (b) that the instruction is an incomplete statement of the law; and (c) that granting the instruction effectively denied the defendant his right to assert the defense that he acted under duress.
¶ 9. When the trial court took up proposed jury instructions, the matter of the propriety of this requested instruction was resolved in the following discussion:

*500 BY THE COURT: Yes, sir. Now that brings us to the final instruction, S-2. Have you seen S-2?
BY [defense counsel]: Yes, sir, and I object to it.
BY THE COURT: You object to it?
BY [defense counsel]: Yes, sir.
BY THE COURT: Well, actually I'm going to grant this instruction.
BY [the prosecuting attorney]: Thank you, Your Honor.
BY THE COURT: Okay. S-2 will be given. Well, I'm going to re-number it to instruction number C-31. All right, anything further at this time before we go back out and instruct the jury?
BY [defense counsel]: Not from the Defense, Your Honor.
¶ 10. "It is the rule of this Court that no assignment of error based on the giving of an instruction to the jury will be considered on appeal unless specific objection was made to the instruction in the trial court stating the particular ground or grounds for such objection." Walker v. State, 740 So.2d 873, 887 (¶56) (Miss.1999). We find that this alleged error in the manner that the jury was instructed was not properly preserved for appellate review and is, therefore, procedurally barred.
¶ 11. Even with the procedural bar in place, there remains the possibility that the granting of the instruction was an error so impacting the fundamental fairness of the trial that we ought to note it as plain error. See, e.g., Berry v. State, 728 So.2d 568, 571(¶15) (Miss.1999); Hunter v. State, 684 So.2d 625, 636 (Miss.1996). We do not conclude the granting of Instruction C-31 to be that sort of error. The recognized problem with the instruction is that it is an abstract statement of the law that provides little, if any, concrete assistance to jurors. Hydrick v. State, 246 Miss. 448, 451, 150 So.2d 423, 424 (1963). However, it is only in cases where specific intent is an element of the crime that the instruction has been deemed reversible error. Thus, for example, in the hypothetical situation of a murder case where the victim is killed by a blow to the head from a blunt instrument, it would constitute reversible error to instruct the jury that the defendant's specific intent to cause the victim's deatha necessary element of murder can be supplied by nothing more than the presumption that the defendant knew, or at least the law charges him with knowledge, that such a blow was likely to cause death. The instruction is apparently found objectionable in those circumstances because it raises the possibility that the jury will not fully deliberate the distinct issue of specific intent, but rather will rely on the instruction to assume the necessary intent from the circumstances of the event alone, even in instances where the actual intent may not, in fact, exist.
¶ 12. However, in cases that do not involve specific intent, the mere fact that the instruction is objectionable as being purely abstract and, thus, unhelpful to the jury is not considered to necessarily constitute reversible error. Stegall v. State, 765 So.2d 606, 609-10 (¶ ¶7-8) (Miss.Ct. App.2000). Aggravated assault has been determined by the Mississippi Supreme Court not to be a crime of specific intent. McGowan v. State, 541 So.2d 1027, 1029 (Miss.1989). Thus, while it appears beyond dispute that the instruction was objectionable as being an unhelpful abstract statement of the law, in this situation it does not have the sort of adverse impact on the fundamental fairness of Hogan's trial that would require us to note it as plain error.
¶ 13. Hogan argues in the alternative that this abstract statement was erroneous *501 as being an incomplete statement of the law. Hogan relies on the case of Hydrick v. State, 246 Miss. 448, 150 So.2d 423 (Miss.1963) to support his argument. The instruction in that case said that an inference could be drawn that the defendant intended the consequences that a person should reasonably expect from his intentional acts unless the evidence showed to the contrary. Id. at 426. Hogan points out that the version of the instruction given in his case did not require that his acts be intentionally done, nor did it deal with the effect to be given to evidence tending to be contrary to the presumption. Hogan is incorrect in his claim that the supreme court approved the more expansive instruction in Hydrick. To the contrary, the court found the instruction to constitute reversible error because Hydrick was charged with a crime for which specific intent was a crucial element. Id. Thus, the contention that the objectionable nature of this instruction could have been resolved by expanding it further is without merit.
¶ 14. Hogan's third argument against the instruction is that, in giving it, the court somehow nullified his defense of duress. Hogan had attempted during trial to defend on the theory that his conduct in driving the vehicle toward the officers and in subsequently fleeing was accomplished under duress because the officers in pursuit of him were using unreasonable force by subjecting him to a barrage of gunfire that was not justified under the circumstances. According to his theory of defense, this caused him to fear imminent serious injury or death if he were not somehow able to end their efforts or escape their presence. Hogan received an instruction on duress and we see no arguable basis to conclude that an abstract instruction such as C-31 had the effect of negating the duress instruction. In the same manner we reviewed Hogan's contention that the instruction violated the prohibitions contained in Hydrick to see if plain error occurred, we have looked at this contention by Hogan to determine whether it might constitute plain error. Not only does this complaint not rise to the level of plain error, we conclude that it does not constitute error at all.

III.

The Weight and Sufficiency of Evidence of Guilt
¶ 15. Hogan argues that the evidence of his guilt was insufficient as a matter of law to sustain the guilty verdicts. Alternatively, he urges this Court to find that the verdicts were against the weight of the evidence, entitling him to a new trial.
¶ 16. It is a well-established rule that, in determining whether a jury verdict is supported by sufficient evidence to show the defendant's guilt beyond reasonable doubt, this Court must accept as true all evidence presented that is supportive of the verdict. Eakes v. State, 665 So.2d 852, 872 (Miss.1995). A jury verdict will only be reversed when the evidence "is such that reasonable and fair-minded jurors could only find the accused not guilty." Gleeton v. State, 716 So.2d 1083, 1087 (¶14) (Miss.1998). The witnesses who testified at trial presented admissible evidence that, if accepted as true by the jury, would plainly establish each of the essential elements of the crimes charged. Those witnesses were not so impeached or their testimony so contradicted that the evidentiary value of the evidence they presented was destroyed. In that situation, there is no legitimate basis to contend that the State's evidence was insufficient to support the convictions as a matter of law.
¶ 17. A claim that the verdicts were against the weight of the evidence *502 raises different considerations. That claim effectively concedes for sake of analysis that there was sufficient evidence to establish the critical elements of the crimes, but contends that other evidence tending to exonerate the defendant was so persuasive that to permit the verdicts to stand would work a manifest injustice. Wetz v. State, 503 So.2d 803, 812 (Miss.1987). Certainly, Hogan, in his defense, presented a scenario as to what occurred that was different from that testified to by the State's witnesses. In his defense, Hogan indicated that he had suddenly and without provocation been subjected to a hail of gunfire that caused him to do everything within his power to flee for his life. Thus, according to his contentions, he was not guilty because he acted under sufficient duress that it was legally impossible for him to possess the requisite criminal intent to commit the various crimes with which he was charged. Additionally, he contends that the medical proof of the injuries received by the various officers is not consistent with the version of events related by them. The jury, in such a situation, acts as finder of fact charged with evaluating the evidence, determining the credibility of the various witnesses, and determining what weight and worth to give to any particular aspect of the proof. Jackson v. State, 614 So.2d 965, 972 (Miss.1993). Once the jury has performed that function, its findings are entitled to substantial deference when reviewed on appeal. Windham v. State, 800 So.2d 1257, 1263 (¶18) (Miss.Ct.App.2001). We are not persuaded that the evidence tending to demonstrate Hogan's innocence as to the various charges was of such weight and worth that it would constitute a substantial miscarriage of justice to permit the present verdicts to stand. In that situation, our duty is to affirm the convictions.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF COAHOMA COUNTY OF CONVICTION OF COUNT I TAKING POSSESSION OF OR TAKING AWAY A MOTOR VEHICLE AND SENTENCE OF TWO YEARS WITH THREE YEARS OF POST RELEASE SUPERVISION TO RUN CONSECUTIVELY TO SENTENCES IN COUNTS II AND III; COUNT II AGGRAVATED ASSAULT ON A LAW ENFORCEMENT OFFICER AND SENTENCE OF FIFTEEN YEARS TO RUN CONSECUTIVELY TO ANY OTHER SENTENCE PREVIOUSLY IMPOSED, AND COUNT III AGGRAVATED ASSAULT ON A LAW ENFORCEMENT OFFICER AND SENTENCE OF FIFTEEN YEARS TO RUN CONCURRENTLY WITH SENTENCE IN COUNT I, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND ORDER TO MAKE FULL RESTITUTION TO VICTIMS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO COAHOMA COUNTY.
KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.