986 So.2d 1042 (2008)
Keith BRIGHT a/k/a Lewis Keith Bright, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2006-KA-01970-COA.
Court of Appeals of Mississippi.
March 4, 2008.
Rehearing Denied June 10, 2008.
*1044 Leslie S. Lee, Jackson, attorney for appellant.
Office of the Attorney General, by John R. Henry, attorney for appellee.
Before MYERS, P.J., GRIFFIS and CARLTON, JJ.
CARLTON, J., for the Court.
¶ 1. Keith Bright was convicted by a Circuit Court of Montgomery County jury for the crime of aggravated assault. He was sentenced to serve twenty years in the custody of the Mississippi Department of Corrections, with six years suspended and five years of post-release supervision commencing upon his release from confinement, the remaining fourteen years to serve.
¶ 2. On appeal, Bright challenges the weight and sufficiency of the evidence and the trial court's refusal to give a lesser-included offense jury instruction for the crime of simple assault. We find no error and affirm.

FACTS
¶ 3. Several months prior to the incident at issue, Bright's mother, Patsy Hart, met the victim, Bob Woods, on a Saturday night at a nightclub in or near the City of Starkville, Mississippi. After some discussion on the topic of occupation, Hart and Woods made arrangements for Hart to come to Woods's home the following Monday to clean his house for a fee. As agreed, Hart went to Woods's home on Monday. According to Hart, Woods forcefully raped her as she entered his bedroom to clean it. After the incident, Hart confided in three of her closest friends, as well as her daughter. Hart stated that did not tell Bright about the alleged rape because "that is just something a mother don't want their son to know."
¶ 4. Six months later, Bright found out about the incident from his sister. On February 25, 2006, several days after learning that his mother had been raped, Bright and his uncle, Donny Meadows, drove to the Four D Grocery in Stewart, Mississippi to purchase beer. Bright asked the cashier where Woods lived, and the two men then drove a short distance to Woods's home. Upon their arrival, Bright got out of the vehicle and went to the front door; Meadows stayed in the vehicle.
¶ 5. According to Woods, he answered a knock at the front door; and Bright asked him if he was Bob Woods, to which he answered, "I am." Bright then asked if his mother had cleaned Woods's house. Woods claimed that he was unable to answer the question because he did not know Bright's identity. Before Woods could do *1045 or say anything, Bright hit him. As Woods fell to the ground, he grabbed Bright's leg. According to Woods, Bright jerked his leg loose causing injury to his arm. The last thing the sixty-seven year-old Woods claimed to remember was being kicked by Bright while lying on the front porch.
¶ 6. Bright admitted that he was very upset, but he testified that he went to Woods's house only to ask him a few questions and find out his version of the story. According to Bright, Woods answered the two questions he posed to Woods, stating that he was Bob Woods and that Hart had cleaned his house a few months earlier. Bright testified that he then said to Woods, "you like to take advantage of women, don't you?" Woods asked what he meant by that question. Bright claimed he then told Woods that his mother had informed him that she had been raped, whereupon Woods "grabbed towards" Bright. Meadows also testified that Woods "throwed up" as if he were ready to fight. Bright admitted that he hit Woods twice in the face, landing the second blow as Woods fell to the ground from the impact of the first blow. Bright claimed that he then walked back to the truck and left. Bright also testified that he "didn't mean to hurt [Woods] that bad." Bright further testified that he drove past Woods's house later the same day to check on him, and he also had someone in his family call to check on Woods.
¶ 7. On February 26, 2006, Glen Amison, a deputy sheriff with the Montgomery County Sheriff's Department, arrested Bright at Hart's house. Officer Amison testified that Bright told him that he went to Woods's house to "whoop that man's a."
¶ 8. Bright was indicted by a grand jury in the Circuit Court of Montgomery County for the crime of aggravated assault under Mississippi Code Annotated section 97-3-7(2)(a) (Rev.2006). At trial, Bright, Meadows, Hart, Woods, and Amison testified in accordance with the facts mentioned above. Dr. Joseph Boggess, one of Woods's treating physicians, was also called as a witness. He testified that Woods had "significant injury to his facial bones." Dr. Boggess stated that Woods's eye socket bones and nasal bones were broken and that Woods's cheek and jaw bones were "sheared away from the scull." Dr. Boggess performed surgery to repair Woods's face using plates and wires to reconstruct the broken bones. At the time of trial, Woods's bones had healed, but he was still experiencing numbness in his face.
¶ 9. At the close of the evidence, counsel for Bright proposed a jury instruction on the lesser-included offense of simple assault. The trial court refused to give the instruction. After deliberation, the jury returned a verdict of guilty of aggravated assault. Bright's post-trial motion for judgment notwithstanding the verdict and, in the alternative, for a new trial was denied. Bright now appeals.

DISCUSSION

I. Weight and Sufficiency of the Evidence
¶ 10. Bright was indicted for aggravated assault under Mississippi Code Annotated section 97-3-7(2)(a), which provides that "[a] person is guilty of aggravated assault if he (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life. . . ."

1. Weight of the Evidence
¶ 11. Bright argues that the trial court erred by denying his motion for *1046 new trial. A motion for new trial challenges the weight of the evidence. Jones v. State, 962 So.2d 1263, 1277(54) (Miss. 2007). We review the denial of a motion for new trial under an abuse of discretion standard of review. Id. On appeal, we view the evidence in the light most favorable to the verdict and will not reverse unless "it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." Bush v. State, 895 So.2d 836, 844(¶ 18) (Miss.2005).
¶ 12. Bright argues that his conduct did not under the circumstances manifest extreme indifference to the value of human life. He claims that the evidence only established that he hit Woods twice in the face. Bright also points to his trial testimony that he went to Woods's house to confront him and that he never meant to seriously injure Woods. Bright further claims that he did not act with extreme indifference because he drove past Woods's house to check on him after the incident, and he had someone in his family call to check on Woods. For these reasons, Bright argues that the jury's verdict was against the overwhelming weight of the evidence.
¶ 13. This issue turns largely on Bright's intent, which is a question for the jury. Chambliss v. State, 919 So.2d 30, 35(15) (Miss.2005) (citing Shanklin v. State, 290 So.2d 625, 627 (Miss.1974)). Intent is determined by "`the act itself, surrounding circumstances, and expressions made by the actor with reference to his intent.'" Id. (quoting Shanklin, 290 So.2d at 627). "Aggravated assault has been determined by the Mississippi Supreme Court not to be a crime of specific intent." Hogan v. State, 854 So.2d 497, 500(12) (Miss.Ct.App.2003) (citing McGowan v. State, 541 So.2d 1027, 1029 (Miss.1989)).
¶ 14. We note that, as written in section 97-3-7(2)(a), the phrase "purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life" is written in the disjunctive. Thus, the State was required to prove that Bright either: (1) purposely caused serious bodily injury, or (2) knowingly caused serious bodily injury, or (3) recklessly caused serious bodily injury under circumstances manifesting extreme indifference to the value of human life. We do not interpret section 97-3-7(2)(a) to require a finding of extreme indifference if the State is able to prove that the defendant acted purposely or knowingly.[1] Therefore, we reject Bright's argument to the extent that he claims the State was required to prove that he acted with extreme indifference to the value of human life.
¶ 15. With this in mind, we do not find the jury's verdict to be against the overwhelming weight of the evidence. The evidence adduced at trial, when viewed in the light most favorable to the verdict, substantially supports the conclusion that Bright purposely or knowingly caused serious bodily injury to Woods. Most significantly, *1047 Bright admitted hitting Woods. Bright told Officer Amison that he went to Woods's house to "whoop that man's a." Woods clearly suffered serious bodily injuries. Viewing the evidence in the light most favorable to the verdict, we do not find that allowing Bright's conviction to stand would sanction an unconscionable result. This issue is without merit.

2. Sufficiency of the Evidence
¶ 16. Bright argues that the trial judge erred by denying his request for a peremptory instruction and denying his motion for judgment notwithstanding the verdict (JNOV). A motion for JNOV and a peremptory instruction both challenge the legal sufficiency of the evidence. Shumpert v. State, 935 So.2d 962, 966(8) (Miss.2006). On appeal, we review the sufficiency of the evidence on the last occasion the challenge was made at trial. Townsend v. State, 939 So.2d 796, 801(23) (Miss.2006) (quoting McClain v. State, 625 So.2d 774, 778 (Miss.1993)). In the instant case, Bright's motion for JNOV was the last occasion that the trial court ruled on the sufficiency of the evidence. The relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Shumpert, 935 So.2d at 966(8).
¶ 17. Bright argues that, by alleging in the indictment[2] that Bright committed an aggravated assault by hitting and kicking Woods, the State undertook the burden of proving that Bright not only hit, but also kicked Woods. Gray v. State, 728 So.2d 36, 71 (176-77) (Miss.1998). Bright claims that the State failed to present sufficient evidence that he kicked Woods. To support this contention, Bright claims that he unequivocally testified that he only hit Woods twice. He also claims that the only evidence tending to show that he kicked Woods was Woods's statement that Bright pulled his leg loose from Woods's grasp.
¶ 18. We find there was sufficient evidence to support a finding that Bright kicked Woods. Woods testified that the last thing he remembered was Bright kicking him as he lay on the porch. The extent of Woods's injuries and Woods's testimony permit a reasonable inference that Bright kicked Woods. Additionally, we find that section 97-3-7(2)(a) does not specify the means by which serious bodily injury must be inflicted. The jury was free to consider the evidence and determine if Bright caused serious bodily injury to Woods either by hitting, kicking, or hitting and kicking.
¶ 19. Bright also claims that two punches to the face are insufficient to support his conviction of aggravated assault. We disagree. As previously determined, Woods's injuries were serious. Bright admitted that he hit Woods, and he made statements to his arresting officer confirming his intent to do so. Considering the evidence in the light most favorable to the verdict, we find sufficient evidence to support Bright's conviction of aggravated assault. The trial court did not err in denying Bright's motion for JNOV. This issue is without merit.

II. Lesser-Included Offense Jury Instruction
*1048 ¶ 20. At trial, Bright requested an instruction on the charge of simple assault. The trial court refused Bright's request for an instruction on the lesser charge of simple assault, finding that the evidence showed that Bright inflicted nothing less than serious bodily injury on Woods. Bright contends that this was error.
¶ 21. A defendant is entitled to have his or her theory of the case presented to the jury. White v. State, 842 So.2d 565, 575(30) (Miss.2003). A lesser-included offense instruction should be given only where the evidence supports the instruction. Reynolds v. State, 658 So.2d 852, 855-56 (Miss.1995). Stated differently, a lesser-included instruction should be given where the evidence is such that a reasonable jury "could find the defendant not guilty of the principal offense charged in the indictment, yet guilty of the lesser-included offense." Monroe v. State, 515 So.2d 860, 863 (Miss.1987) (citations omitted).
¶ 22. Mississippi Code Annotated section 97-3-7(1) (Rev.2006) provides that "[a] person is guilty of simple assault if he (a) attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; or (b) negligently causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm. . . ."
¶ 23. Mississippi Code Annotated section 97-3-7(2)(a), provides that "[a] person is guilty of aggravated assault if he (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life. . . ."
¶ 24. While the number of blows is uncertain, it is undisputed that Bright intentionally hit Woods. As stated above, aggravated assault is not considered to be a crime of specific intent under Mississippi law. See Hogan, 854 So.2d at 500(12) citing McGowan, 541 So.2d at 1029. Prior Mississippi cases have explained on several occasions that aggravated assault under section 97-3-7(2)(a) and simple assault under 97-3-7(1)(a) are distinguished mainly by the extent of the victim's injury, i.e., whether the victim suffered "bodily injury" or "serious bodily injury." See e.g., Harbin v. State, 478 So.2d 796, 798 (Miss. 1985); Brown v. State, 934 So.2d 1039, 1043(10) (Miss.Ct.App.2006) citing Odom v. State, 767 So.2d 242, 246(13) (Miss.Ct.App. 2000). Whether "bodily injury" or "serious bodily injury" resulted is a question for the jury. Odom, 767 So.2d at 246(13).
¶ 25. Bright cites Taylor v. State, 577 So.2d 381, 383-84 (Miss.1991) as controlling authority. In Taylor, the defendant was charged with aggravated assault under section 97-3-7(2)(a) for repeatedly punching the victim in the face during an alleged rape. Id. at 381-82. As a result of the assault, the victim suffered bruising and bleeding to her face and a damaged nerve in her head. Id. at 382-83. The trial court denied Taylor's request for a lesser-included instruction on simple assault. Id. On appeal, our supreme court reversed the denial of a lesser-included offense instruction. Id. at 384. The court based its determination in part on the disparity in maximum punishments for rape and simple assault, respectively, life imprisonment and six months' imprisonment. Id. at 383. Beyond this, the basis of the Taylor decision is difficult to discern; the court reasoned as follows:
Taking all the evidence in a light most favorable to Kendall Taylor, including the fact that he did transport [the victim] to the hospital, and considering the elements of both aggravated and simple assault, we cannot say that a rational, *1049 reasonable jury could find Taylor guilty only of aggravated assault. The circuit court erred in not giving [the lesser-included offense instruction].
Id. at 384.
¶ 26. Bright contends that Woods's injuries were comparable to those sustained by the victim in Taylor. Bright points to his actions of remorse in driving past Woods's house after the attack and having a family member call to check on Woods. Bright further relies on Taylor for the proposition that a large disparity in sentences between aggravated assault and simple assault favors the granting of a lesser-included instruction.
¶ 27. We do not find Taylor controlling. We acknowledge that a large disparity in maximum punishments weighs in favor of granting a lesser-included offense. Id. at 383 (citing Boyd v. State, 557 So.2d 1178, 1181 (Miss.1989)).[3] However, notwithstanding a large disparity in maximum punishments, lesser-included offense instructions cannot be indiscriminately given. Boyd, 557 So.2d at 1181 (citing Mease v. State, 539 So.2d 1324 (Miss.1989)). The requirement remains that there must be evidence to support the lesser-included offense. Id. The key distinction between Taylor and the instant case is the extent of the injuries suffered by the respective victims. Woods suffered multiple broken bones; the victim in Taylor suffered mere bruising and bleeding to his face. Although the victim in Taylor also suffered a damaged nerve, the decision shed no light on the severity of the injury.[4] Because the Taylor court found that a simple assault instruction was warranted, we interpret the decision to have impliedly determined that a reasonable jury could have found that the victim suffered either bodily injury or serious bodily injury.
¶ 28. However, the State argues, and we agree, that a simple assault jury instruction was not warranted in this case because no reasonable juror could characterize Woods's injuries as less than serious. Harbin, 478 So.2d at 800; Brown, 934 So.2d at 1043(12).
¶ 29. In Harbin, the defendant was denied a lesser-included offense instruction on simple assault and was convicted of aggravated assault for repeatedly hitting the victim in the head and stomach with his fists and a brick. Harbin, 478 So.2d at 797-99. There the victim suffered internal bleeding, as well as bruises and cuts on the back of her head that required stitches. Id. On appeal, our supreme court affirmed the denial of Harbin's request for a lesser-included offense on simple assault stating:
[W]here, as here, uncontradicted physical facts so overwhelmingly support a finding of aggravated assault and render so unreasonable the suggestion that the accused may have been guilty only of simple assault, reversal is not required.". . . The clincher here is the uncontradicted evidence regarding the nature and extent of [the victim's] injuries. She was severely wounded. She was hospitalized for eighteen days and ran up medical bills in the vicinity of $13,000.00. Beyond a reasonable doubt, such injuries are "serious bodily injuries" within Section 97-3-7(2)(a).
Id. at 799-800.
¶ 30. Similarly in Brown, the defendant was denied an instruction on simple assault *1050 and convicted of aggravated assault for kicking the victim in the stomach and hitting her three times in the jaw, breaking it. Brown, 934 So.2d at 1041(3). On appeal, this Court affirmed the trial court's refusal to give a lesser-included offense instruction on simple assault because the victim's injuries were serious. Id. at 1043(12) ("[Based on] the severity and the extensive treatment necessary to repair the injuries, these injuries were serious, and a lesser-included offense instruction is not required.").
We find the decisions of Brown and Harbin to clearly hold that a lesser-included offense jury instruction on simple assault is properly denied where no reasonable jury could conclude that the victim's injuries were less than serious. Significantly, we note that Woods's injuries were more severe than the injuries suffered by the victim in Brown. Therefore, we find that there was insufficient evidence to support a lesser-included offense instruction on simple assault. This issue is without merit.
¶ 31. THE JUDGMENT OF THE MONTGOMERY COUNTY CIRCUIT COURT OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH SIX YEARS SUSPENDED AND FIVE YEARS OF POST-RELEASE SUPERVISION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MONTGOMERY COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. IRVING, J., NOT PARTICIPATING.
NOTES
[1] At this point, we attempt to identify a possible source of confusion regarding intent under our assault statute. As recognized in Murrell v. State, 655 So.2d 881, 884 (Miss. 1995), "[t]he definitional portion of our assault statute comes verbatim from the Model Penal Code." (citing Miss.Code Ann. § 97-3-7; Model Penal Code, § 211.1). The Model Penal Code abandons common law distinctions between specific and general intent and adopts and separately defines four types of culpability: (1) Purposely, (2) Knowingly, (3) Recklessly, and (4) Negligently. See Model Penal Code, § 2.02. While borrowing the Model Penal Code's definition of assault, Mississippi retains common law distinctions of intent. See Hogan, 854 So.2d at 500(12) (aggravated assault is not a crime of specific intent).
[2] The indictment charged that Bright:

On or about February 25, 2006 in Montgomery County, Mississippi, and within the jurisdiction of this Court, did willfully, unlawfully, feloniously and purposely or knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life did cause serious bodily injury to Bob Woods, by repeatedly hitting him with his fists and kicking him, against the peace and dignity of the State of Mississippi.
[3] The disparity between the maximum punishments in the instant casetwenty years for aggravated assault and six months for simple assaultis far less than the disparity at issue in Taylorlife imprisonment versus six months imprisonment.
[4] The court did affirm the denial of Taylor's request for a peremptory instruction on aggravated assault, finding sufficient evidence that the victim's injuries were serious. Taylor, 577 So.2d at 382-83.