CARLTON, J., FOR THE COURT:
*598 ¶ 1. A Lafayette County jury convicted Shauntez Johnson of aggravated assault, and the trial court sentenced him to a term of twenty years in the custody of the Mississippi Department of Corrections (MDOC), with four years suspended, followed by four years' postrelease supervision.[1] Johnson filed a motion for a new trial or, in the alternative, a judgment notwithstanding the verdict (JNOV). The trial court denied Johnson's posttrial motion.
¶ 2. Johnson now appeals, arguing that he was denied a fair trial due to an alleged error in a jury instruction. Finding no reversible error, we affirm. See Conley v. State , 790 So.2d 773, 789 (¶ 55) (Miss. 2001) (defining harmless error as "clear beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained").
FACTS
¶ 3. At a jury trial held on April 14, 2014, Amber Kimbrough testified that on the evening of August 11, 2013, she was working at the Pita Pit restaurant in Oxford, Mississippi. After the restaurant closed for the evening, Amber prepared to take out the trash while another employee, Chris Marks, washed the dishes. Amber testified that she heard the buzzer for the outside door and then heard the door open. Amber stated that when she turned around, she saw a man running behind her, telling Amber that he was going to teach her to keep her mouth shut. Amber testified that the man "hit [her] and knocked [her] to the ground and he kept hitting [her] and kicking [her] ... and then [she] blacked out." Amber stated that the next thing she remembers is waking up at the MED hospital in Memphis, Tennessee, where she received treatment for her injuries from the attack, including a broken jaw, broken nose, broken eye socket, and bruised lungs and ribs. During her testimony, Amber identified Johnson in the courtroom as the man who attacked her. Amber testified that she recognized Johnson as her attacker because the week prior to her assault, he was involved in a disturbance at the Pita Pit.
¶ 4. Officer David Sabin of the Oxford Police Department was dispatched to the Pita Pit on the night of August 11, 2013. Officer Sabin testified that he observed Amber on the ground, unconscious, and she appeared to be bleeding from her face and head. Officer Sabin stated that Marks informed him that a young male had caused disturbances at the Pita Pit the prior week, which led the employees to call the police. Officer Sabin asked Amber if the man who attacked her was the same man who caused disturbances at the restaurant the prior week, and Amber nodded her head to confirm that it was the same man.
¶ 5. In September 2013, a Lafayette County jury indicted Johnson for one count of aggravated assault in violation of Mississippi Code Annotated section 97-3-7(2)(a) (Rev. 2014).[2] After a jury trial, the *599 jury found Johnson guilty of aggravated assault.
¶ 6. On April 22, 2014, the trial court held a sentencing hearing wherein the court sentenced Johnson to twenty years in the custody of the MDOC, with four years suspended, and four years of postrelease supervision upon his release from prison. The trial court also recommended that, upon entry in the custody of the MDOC, Johnson receive a mental evaluation and be considered for appropriate treatment if diagnosed with a mental condition.[3]
¶ 7. On May 23, 2014, Johnson filed a motion for a new trial or, in the alternative, a motion for a judgment notwithstanding the verdict (JNOV). The record reflects that over two years later, on September 15, 2016, the trial court entered an order denying Johnson's posttrial motions.[4] Johnson filed the present notice of appeal on September 26, 2016.
STANDARD OF REVIEW
¶ 8. "Jury instructions are generally within the discretion of the trial court[,] and the settled standard of review is abuse of discretion." Moody v. State , 202 So.3d 1235, 1236-37 (¶ 7) (Miss. 2016) (quoting Bailey v. State , 78 So.3d 308, 315 (¶ 20) (Miss. 2012) ). "This Court reviews jury instructions as a whole." Id. We will not reverse the trial court when the jury instructions, "taken as a whole[,] fairly-although not perfectly-announce the applicable primary rules of law[.]" Id.
DISCUSSION
¶ 9. Johnson argues that the trial court's modification of one of his jury instructions resulted in an incorrect statement of the law. Johnson specifically takes issue with the trial court's modification of Instruction D-1, defining the following element of the charged offense of aggravated assault: "serious bodily injury."
¶ 10. The record reflects that at the jury-instruction conference, the State objected to Instruction D-1, arguing that the instruction as submitted by the defense defines "serious bodily injury" in the context of the child-abuse statute, and not the aggravated-assault statute, and that Instruction D-1 incorrectly used only the phrase "permanent disfigurement." The State suggested that the trial judge amend the instruction to add the words "or temporary," thus changing the instruction to say "permanent or temporary disfigurement."
¶ 11. The trial judge agreed to amend the instruction, over an objection from the defense. The judge handwrote "or temporary" into Instruction D-1, which, at the time it was presented to the jury, read:
Serious bodily injury means that the bodily injury that was caused to the victim has to have created a substantial risk of death or which caused serious permanent or temporary disfigurement, or protracted loss or impairment of the function of any bodily member or organ. The court instructs the jury that if the *600 [S]tate has failed to prove, beyond a reasonable doubt, that the victim suffered a serious bodily injury, the jury must find the defendant not guilty of aggravated assault.
¶ 12. Johnson argues that by adding the words "or temporary" before disfigurement, the trial judge thereby lowered the threshold for the State's burden to show serious bodily injury. Johnson claims that since his theory of defense was that Amber's injuries were not "serious" under section 97-3-7(2)(a)'s definition of "serious bodily injury," then he was guilty at most of simple assault. Johnson asserts that whether Amber's injuries were serious is a question of fact for the jury.[5]
¶ 13. The Mississippi Supreme Court has defined the type of "serious bodily injury" necessary to prove aggravated assault for purposes of section 97-3-7(2) as follows: "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Fleming v. State , 604 So.2d 280, 292 (Miss. 1992) (quoting Model Penal Code § 210.0 (1980)); see also Rickman v. State , 150 So.3d 983, 986 (¶ 12) (Miss. Ct. App. 2014) (quoting Fleming for the definition of "serious bodily injury").
¶ 14. The record reflects that the indictment charged Johnson with "unlawfully, willfully and feloniously, purposely and knowingly caus[ing] serious bodily injury to [Amber], by beating [Amber] with his fist and kicking her in the head even after unconsciousness, in violation of the provisions of section 97-3-7(2)(a) [.]" The record also shows that at trial, the jury heard testimony from Amber regarding the injuries she received as a result of the assault: a broken jaw, a broken nose, a broken eye socket, and bruised lungs and ribs. Amber testified that at the time of trial, almost a year after the assault, her jaw "pops on occasion," sometimes causing her pain, and her jaw "acts like it wants to lock up." The State also admitted photographs of Amber's injuries into evidence. The evidence was undisputed that Amber suffered a broken jaw, broken nose, and broken eye socket.
¶ 15. In Bright v. State , 986 So.2d 1042, 1045, 1047 (¶¶ 8, 19) (Miss. Ct. App. 2008), this Court found that sufficient evidence existed to support the defendant's conviction of aggravated assault where the State presented evidence that the victim suffered broken eye-socket and nasal bones, and that the victim's "cheek and jaw bones were 'sheared away from the s[k]ull.' " See also Fleming , 604 So.2d at 292 (holding that "serious bodily injury" occurred where the victim suffered a flesh wound to his arm requiring sutures and surgery, and a broken jaw ); Harbin v. State , 478 So.2d 796, 799 (Miss. 1985) (holding that the "uncontradicted physical facts ... overwhelmingly support[ed] a finding of aggravated assault"); Rickman , 150 So.3d at 986 (¶ 13) (holding that "serious bodily injury" occurred where the victim suffered permanent damage to his left pupil, a broken nose, and a fractured hip and pelvic bone); Brown v. State , 934 So.2d 1039, 1043 (¶ 12) (Miss. Ct. App. 2006) (affirming the trial court's refusal to grant a lesser-included-offense *601 instruction on simple assault because the victim's injuries, which included a broken jaw, were so serious).
¶ 16. As previously stated, Amber, like the victims in Bright , Fleming , Harbin , Rickman , and Brown , suffered multiple broken bones. In this case, Amber suffered a broken nose and broken eye socket, in addition to other injuries. Thus, in following this line of cases, no reasonable juror could characterize Amber's injuries as less than serious bodily injury, since her injuries included broken bones and loss of consciousness. See id. Therefore, any error in the trial court's modification of the jury instruction defining serious bodily injury constitutes mere harmless error. See Conley , 790 So.2d at 783 (¶ 55).
¶ 17. AFFIRMED.
LEE, C.J., GRIFFIS, P.J., AND GREENLEE, J., CONCUR. IRVING, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. WILSON, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. BARNES, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY FAIR AND WESTBROOKS, JJ. TINDELL, J., NOT PARTICIPATING.

Miss. Code Ann. § 97-3-7(2)(a) (Rev. 2014).

Mississippi Code Annotated section 97-3-7(2)(a) provides, in relevant part, that:
A person is guilty of aggravated assault if he (i) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; ... and, upon conviction, he shall be punished by imprisonment in the county jail for not more than one (1) year or in the Penitentiary for not more than twenty (20) years.

On April 17, 2014, the trial judge granted Johnson's motion for a mental evaluation. The trial judge ordered a court-appointed mental-health counselor to determine Johnson's present intelligence quotient, including an analysis of his verbal, performance, and full-scale IQ, and also determine whether Johnson suffered from any mental diseases or abnormalities.

Our review of the record shows that on January 14, 2015, Johnson filed a motion for an out-of-time appeal, explaining that he mistakenly believed that his trial attorney filed a timely notice of appeal of the trial court's ruling. However, the record reflects no ruling on Johnson's motion for a new trial or, in the alternative, a JNOV prior to September 15, 2016. Thus, his notice of appeal was timely.

The jury received instructions regarding the elements of both aggravated assault and also the lesser charge of simple assault. Instruction S-1A instructed jurors: "If you find from the evidence in this case beyond a reasonable doubt that ... Johnson ... purposely or knowingly caused bodily injury to [Amber], then you shall find the defendant guilty of simple assault." As explained in Bright v. State , 986 So.2d 1042, 1048 (¶ 24) (Miss. Ct. App. 2008), aggravated assault and simple assault "are distinguished mainly by the extent of the victim's injury, i.e., whether the victim suffered 'bodily injury' or 'serious bodily injury.' " (citing Harbin v. State , 478 So.2d 796, 799 (Miss. 1985) ).